UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSHUA COLES,

Defendant.

_____/

Case No. 18-cr-20254

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER DENYING DEFENDANT'S MOTION FOR HOME DETENTION/EARLY RELEASE DUE TO COVID-19 [#12]

### I. INTRODUCTION

On August 14, 2018, Defendant Joshua Coles pled guilty to one count of distribution of a controlled substance and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. ECF No. 7. The Defendant's Rule 11 Plea Agreement specifies that Coles provided heroin to a confidential informant and participated in various controlled buys arranged by another individual. *Id*. at PageID.22. On December 20, 2018, Coles was sentenced to 24 months imprisonment, followed by a supervised release term of 36 months. ECF No. 10.

Presently before the Court is the Defendant's Motion for Home Detention/Early Release Due to COVID-19, filed on April 6, 2020. ECF No. 12. The Court will construe Defendant's requested relief as a Motion for Compassionate

1

Release under 18 U.S.C. § 3582.  The Government filed a Response on April 10, 2020.  ECF No. 16.  On April 11, 2020, this Court ordered the Government to produce Coles' medical records and stated that "defense counsel may submit any supplemental documents related to the Defendant's respiratory conditions and/or diagnoses that would aid in the Court's resolution of this matter."  ECF No. 17, PageID.105.  The Government provided the Defendant's medical records on April 13, 2020.  ECF No. 19.  Coles submitted supplemental briefing on the same date. ECF No. 20.

For the reasons that follow, the Court will DENY the Defendant's Motion [#12].

## II. BACKGROUND

### A. Coles' Procedural History

Joshua Coles is twenty-eight years old.  Pursuant to a Rule 11 plea agreement, Coles pled guilty to one count of Distribution of Heroin and Aiding and Abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  ECF No. 7.  Specifically, Coles sold various quantities of heroin to a confidential informant in multiple controlled buys.  *Id.*  In his Rule 11 agreement, Coles acknowledged responsibility for 74.8 grams of heroin.  *Id.*  The Defendant also has two prior charges from 2014 for possession of drugs.  *Id.* at PageID.33.

Coles is currently serving a 24-month sentence at Elkton Federal Correctional Institution in Ohio.  ECF No. 19, PageID.108.  While his release date is set for December 10, 2020, Coles asserts that he will be eligible for release to home confinement in June 2020.  ECF No. 20, PageID.187.

## B. COVID-19

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes.  *See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads* (last visited April 15, 2020).  The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions.  *Id.*  While it is thought that people are most contagious when symptoms are present, the virus has also been detected in asymptomatic persons.  *Id.*  The incubation period is believed to be up to fourteen days in duration.  *Id*.

There is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it.  *Id.*  According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."  *Id*.  The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable,

avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id*. The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if possible. *Id*.

The CDC has indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*. Older adults – 65 or older – and people suffering from underlying medical conditions such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease or people who are immunocompromised such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id*. While it has been accepted that older adults are the most vulnerable, a March 18, 2020 CDC report noted that 38% of the 508 hospitalized patients were younger – between 20 and 54 years of age. *See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) United States, February 12 – March 16, 2020* (Mar. 18, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm (last visited

Apr. 15, 2020).   An April 8, 2020 CDC report on hospitalization rates among COVID-19 patients notes that out of the 1,482 hospital patients studied, 74.5% were aged 50 years or older and 54.4% were male.  *See* Centers for Disease Control, Morbidity and Mortality Weekly Report (April 8, 2020), *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 – COVID-NET, 14 States, March 1–30, 2020*, https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6915e3-H.pdf.   Additionally, the CDC reports that "[a]pproximately 90% of hospitalized patients identified . . . had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease." *Id.*

The swift and stunning spread of the novel coronavirus of 2019 has changed the world in record speed.  At the time of writing, the majority of states have issued stay at home orders, including Governor Gretchen Whitmer of Michigan, who issued a state of emergency when the State's first two cases of coronavirus were reported on March 10, 2020.  On March 24, 2020, Governor Whitmer issued a stay at home order requiring all but essential workers to report to work.   All primary and secondary schools, as well as colleges and universities, have shuttered indefinitely. Dining at restaurants is prohibited and retailers, small businesses included, have closed doors unless they sell merchandise deemed essential.

Moreover, even with the Governor's stay-at-home order, Michigan continues to experience staggering numbers of confirmed COVID-19 cases and deaths.  On April 9, 2020, Governor Whitmer extended the stay-at-home order through May 1, 2020.  At the time of this writing, a little more than thirty days after the initial two COVID-19 cases were reported in Michigan, the total confirmed number of COVID-19 cases now totals 27,001, with 1,768 lives lost.  Those that have died range in age from 20 to 107.  The United States alone accounts for 614,180 confirmed COVID-19 cases representing roughly 25% of the total cases worldwide at 1,981,239.  Since the virus was first reported on January 21, 2020 by a Washington State man, the United States has lost 26,061 lives to COVID-19.

## C. FCI Elton

Coles seeks early release from his term of imprisonment, citing concerns about the conditions at FCI Elton specifically and its prevalence of COVID-19 infections and fatalities.  *See* ECF No. 12.  As of April 14, 2020, 36 inmates at FCI Elton and 26 staff tested positive for COVID-19, and four inmates have died thus far.  *See* *COVID-19 Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Apr. 15, 2020).  Over forty inmates from FCI Elton have been hospitalized, and at least thirteen were on ventilators according to reports from earlier in April.  *See Elton Prison Union Chief Talks Coronavirus Affect on Staff*, Times Reporter (Apr. 9, 2020),

https://www.timesreporter.com/news/20200409/elkton-prison-union-chief-talks-coronavirus-affect-on-staff (last visited April 15, 2020).  A sister district court noted that "[t]he situation at FCI Elkton in particular is alarming. . . Elkton is filled to capacity and appears to have few tests." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *9 (E.D. Pa. Apr. 1, 2020) (explaining that the defendant "represents that inmates at Elkton do not have adequate soap or disinfectant, are still housed together in large groups, and share a thermometer without sanitization, against critical public health recommendations.").

Coles additionally claims that "[m]akeshift tents are placed on the  basketball court for the deaths of inmates passing from the COVID-19."  ECF No. 12, PageID.66.  On April 13, 2020, the ACLU of Ohio filed a class action lawsuit against FCI Elkton, alleging that the facility has not implemented adequate social distancing or hygiene measures.  *See Criminal Justice Press Release*, ACLU (Apr. 13, 2020), https://www.acluohio.org/archives/press-releases (last visited Apr. 15, 2020).

In his request for early release, the Defendant asserts that he suffers from asthma and is therefore "particularly vulnerable" to the COVID-19 virus at FCI Elkton.  ECF No. 20, PageID.187.  In its Response, the Government opposes Coles' release and states that his "claim of asthma is not substantiated by his medical records" because his Bureau of Prisons (BOP) medical records contain "at least four instances where Coles denied having any respiratory problems."  ECF No. 16,

PageID.77.  The Government further argues that (1) the BOP is already assessing its population to prioritize the release of those at highest risk; (2) Coles has not exhausted his administrative remedies for compassionate release through the BOP first; and (3) even if the exhaustion requirement were waived, Coles does not meet the statutory qualifications for compassionate release.  *Id.* at PageID.75-76.

Considering the dispute over the Defendant's asthma diagnosis, the Court ordered the Government to produce the relevant BOP medical records.  ECF No. 17. The Court also provided the Defendant with an opportunity to file supplemental briefing relating to Coles' respiratory condition and any diagnoses.  *Id.*  Both parties submitted additional documentation on April 13, 2020.  ECF Nos. 19, 20.

## III. ANALYSIS

A criminal defendant may move for compassionate release under 18 U.S.C. § 3582.  As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

**(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c).  Under this statute, Coles must meet the requirements of exhaustion and "extraordinary and compelling reasons" to be eligible for compassionate release.  Each element is discussed in turn below.

### A. Exhaustion is Futile Under the Unique Circumstances Presented By COVID-19 at FCI Elkton

The compassionate release statue mandates that a defendant must first exhaust his administrative remedies with the BOP, or wait 30 days in the event the BOP fails to act, before petitioning to a court.  18 U.S.C. § 3582(c).  Generally, exhaustion is a mandatory prerequisite to compassionate release relief.  *See Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016).  Contrary to the Government's assertion, however, a court may have jurisdiction to grant an inmate's requested release, even if he has not yet exhausted his claim with the BOP.[1]  *See, e.g., Miller v. United States*, No. CR 16-

---

[1] Given the nationwide surge of COVID-19 motions from pretrial detainees and inmates seeking release, the Court notes that the exhaustion requirement has been addressed in an incongruent and often contradictory manner.  *See United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (finding that the court does not have the power to waive the exhaustion requirement) (string citing cases with similar holdings).  This Court, however, finds that the exhaustion requirement will not bar an inmate from seeking compassionate release in light of the COVID-19 pandemic if he can demonstrate that waiver is appropriate under one of the *Washington* exceptions.  *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019).

20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020); *United States v. John McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020). A court may waive the exhaustion requirement if certain exceptions apply, including a finding that exhaustion would be futile or would subject the individual to undue prejudice. *Miller*, No. CR 16-20222-1, 2020 WL 1814084 at *2-3 (holding that these exceptions to the exhaustion requirement were present and granting the petitioner's release) (quoting *Washington*, 925 F.3d at 118 (2d Cir. 2019)).

Here, Coles has not requested compassionate release from the BOP, and has therefore failed to administratively exhaust his claims. He argues instead that exhaustion is futile given the dire circumstances at FCI Elkton and that he would be unduly prejudiced by a requirement to request relief through administrative channels first. Upon a review of the conditions at FCI Elkton and the rapid spread of COVID-19, the Court agrees with Coles. The Defendant could be unduly prejudiced if the Court required him to first exhaust his claim with the BOP, which may delay the adjudication of this matter by thirty days or longer. The nation has witnessed how quickly COVID-19 has spread in communities across the world in just a few weeks; in the past thirty days, for example, Ohio has seen an increase from 37 to 7,591 COVID-19 cases. *See Coronavirus: A Look at How Ohio Cases, Deaths and*

*Hospitalizations Are Adding Up Over Time*, The Columbus Dispatch (Mar. 23, 2020), https://www.dispatch.com/news/20200323/coronavirus-look-at-how-ohio-cases-deaths-and-hospitalizations-are-adding-up-over-time (last visited April 15, 2020); *Coronavirus (COVID-19)*, Ohio Department of Health, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home (last visited April 15, 2020).

While the BOP states that it has implemented procedures to combat the spread of COVID-19, it is evident that there is still a lack of protective equipment, hygienic products, and maintenance of social distancing guidelines at FCI Elkton.  See ECF No. 20-12, PageID.297.  Given the unique circumstances presented by COVID-19 in prisons, and particularly at FCI Elkton, requiring Coles to exhaust his claim with the BOP first is futile.  Accordingly, the exhaustion requirement is waived and Coles' request for compassionate release may be properly considered by the Court.

**B. Coles Does Not Currently Present Extraordinary and Compelling Reasons that Warrant His Early Release**

For a court to grant compassionate release, the inmate must also demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c).  The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines.  U.S.S.G. § 1B1.13.  These reasons are classified in four categories: (1)  the defendant's medical condition; (2) the defendant's age; (3) family

circumstances, and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Here, Coles has not provided extraordinary or compelling reasons that justify granting compassionate release at this time. The first element of the Section 1B1.13 analysis, Coles' medical condition, is the most contested aspect of his motion. In his original request, Coles states that he is susceptible to a severe COVID-19 diagnosis because of his asthma. ECF No. 12, PageID.66. But in its Response, the Government refers to Coles' BOP medical records and argues that there is no indication Coles has asthma or any other high risk condition. ECF No. 16, PageID.76.

In response to the Court's April 11, 2020 Order, the Government provided Coles' BOP medical records and Coles submitted supplemental documentation. While informative about the conditions at FCI Elkton generally, Coles' supplemental briefing failed to provide any information specific to Coles that demonstrates a confirmed asthma diagnosis or any other medical condition warranting compassionate release. The brief refers to Coles as "someone who suffers from asthma" once, but provides no other documentation supporting this assertion. ECF No. 20, PageID.187. Conversely, the BOP medical records contain at least four occasions where Coles denies having any respiratory problems. *See* ECF No. 19, PageID.128, 134, 156, 159. Other district courts have granted

compassionate release when the inmates' medical conditions are numerous and severe, placing them at a higher risk for serious illness from COVID-19. *See Miller*, No. CR 16-20222-1, 2020 WL 1814084 at *4 ("The CDC also states that individuals with underlying medical conditions, such as a chronic lung disease, a serious heart condition, and liver disease, have a higher risk of severe illness . . . Miller suffers from all three."); *McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *11-12 ("McCarthy . . . suffers from COPD, asthma, and other lung-related ailments. These medical conditions are well-documented and serious, and they substantially increase his risk of severe illness if he contracts COVID-19."). Coles does not meet the standard for the first category here.

Additionally, Coles has not demonstrated that extraordinary and compelling circumstances exist for any of the three remaining categories. First, he is twenty-eight years old. The CDC guidance currently states that individuals who are 65 and older are generally at an elevated risk of severe illness with COVID-19. *See Groups at Higher Risk for Severe Illness*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 15, 2020). Second, Coles asserts that he "has a home to return to and a supportive family that will do all it can to protect him." ECF No. 20, PageID.210. While this may be true, this fact is not sufficient alone to justify compassionate release. Finally, no other reasons are presented separately or in

conjunction with the above factors that warrant granting Coles compassionate release at this time.

## IV. CONCLUSION

For the reasons discussed herein, the Court will DENY Defendant's Motion for Compassionate Release [#12].

**IT IS SO ORDERED.**


                                                    s/Gershwin A. Drain
                                                    GERSHWIN A. DRAIN
                                                    UNITED STATES DISTRICT JUDGE

Dated:  April 17, 2020


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 17, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager